In re Estate of Pfeifle.

[Cite as In re Estate of Pfeifle, 4 Ohio Misc. 229.]

(No. 85966—Decided September 13, 1965.)

Exceptions by Department of Taxation: Probate Court of Summit County.

*Messrs. Brouse, McDowell, May, Bierce & Wortman* and *Mr. Robert C. Brouse,* for the estate.

*Mr. William B. Saxby,* attorney general, and *Mr. Jon A. Ziegler,* for the Tax Commissioner.

Koplin, P. J.   This cause came on to be heard upon the exceptions filed herein by the Department of Taxation, state of Ohio.

The original determination by this court excluded from the estate for succession tax purposes the value and amount of property transferred by the decedent, Fred J. Pfeifle, to a trust, which transfer was more than two years prior to the date of death of Mr. Pfeifle and which determination was based upon an application to so determine the tax by the executor.

There was no oral testimony offered at the time of the hearing on the exceptions by agreement of the parties; the matter is being submitted to the court by documents and affida-

vits. Submitted by the Department of Taxation are the following exhibits:

1. Certified copy of death certificate.

2. A letter with an attached inventory listing valuations of the property transferred into each of the inter vivos trusts established by the decedent, signed by Walter L. Munroe, a member of the staff of the Summit County Auditor.

Submitted on behalf of the executors of the estate are the following exhibits:

Exhibit A, being the affidavit of Robert C. Brouse.

Exhibit B, being the second affidavit of Robert C. Brouse.

Exhibit C, an affidavit of Sybil C. Rett Pfeifle, Arthur Pfeifle, Dorothy Pfeifle Stroupe and George K. Stroupe.

In addition to the foregoing exhibits of the respective parties to this hearing, the court has before it the original papers of the estate being probated and the application pertaining to the determination of inheritance tax, including the trust, the will, the amendments to the trust, and the codicil to the will.

The Tax Commissioner contends, with which the executors of the estate disagree, that the property transferred by Fred J. Pfeifle, the decedent, to the Fred J. Pfeifle Trust on January 30, 1957, was a transfer without consideration intended to take effect in possession or enjoyment at or after the death of the decedent, which constituted a taxable succession by virtue of Section 5731.02 (C) (2), Revised Code, and that such transfer was made without consideration and in contemplation of death, and hence, for a succession taxable by virtue of the laws of the state of Ohio.

The facts as gathered from the record reflect that Fred J. Pfeifle was born August 10, 1876; that on January 30, 1957, he, then being more than 80 years of age, executed the Fred J. Pfeifle Trust; he also executed his will; and the same are to be considered as part of the record in this case; that on March 25, 1957, he executed the first amendment to the trust; and on the 5th day of April, 1961, he executed the second amendment to the trust; and on the same date, to wit, the 5th day of April, 1961, he executed the first codicil to the last will and testament to his will. These instruments are attached to the brief of the executors and are identified as exhibits A and B.

The decedent died on December 26, 1962, at the age of 86.

He died of cerebral atherosclerosis, with which he was afflicted for ten years, and as the death certificate sets forth, was due to generalized cerebral atherosclerosis and hypertension and myesthenia gravis, which conditions had existed for twenty-eight (28) years. He was in good health for a man of his age, and on the day to wit, January 30, 1957, when he executed his last will and testament and established the trust, his health was described as good, as already stated, and that he continued to enjoy reasonably good health for two years thereafter; he was able to engage in some physical activities, as more clearly set forth in the affidavits of members of his family that form part of the record.

The record further discloses that he was survived by his second wife, son, daughter, and four grandsons; all principal beneficiaries under the trust; that the value of the property on December 26, 1962 (date of death), that was transferred to the trust when it was created, was approximately $324,111.00; that the value of the gross estate of the decedent as disclosed by the inventory of the estate was approximately $234,397.00; that by virtue of Item IV of the Will, notes of the Mechanical Mold Company owned and held by the decedent at the time of his death, in the amount of $213,888.00 passed to the trust, as did an additional $4,421.00 (being one-fourth of the residue and passing to the trust under Item V of the will); that as a result of the provisions of the will, the combined assets of the trust immediately following the death of the testator approximated $542,421.00; and that the amount left for distribution under the will to the designated legatees was approximately $13,236.00. The decedent, prior to executing the codicil to his will, and the second amendment to the trust, was concerned that Fred Jay Pfeifle, his grandson, lacked financial prudence; and that the changes to the trust, by virtue of the second amendment, were made so as to withhhold distribution of funds to the grandson, Fred Jay Pfeifle, until he demonstrated financial prudence.

An examination of the trust agreement and the amendments thereto reveals that eleven (11) trusts were created in the same instrument, one for each of the following:

His wife (Article III)

His son, Arthur Pfeifle (Article IV)

His daughter, Dorothy Pfeifle Stroupe (Article V)
Carl Pfeifle and Julia Pfeifle (Article VI)
Marjorie P. Boden (Article VII)
Joyce L. Pfeifle (Article VIII)
Fred Jay Pfeifle (Article IX)
Frances May Pfeifle (Article X)
Kenneth George Stroupe (Article XI)
Robert Arnold Stroupe (Article XII)
Hubert C. Rett (Article XIII)

With the exception of the trust created for his wife (Article III), in which instance the corpus consisted of an insurance policy, the proceeds of which are exempt from taxation and are not at issue, and the Fred Jay Pfeifle Trust and the remaining nine (9) trusts contain identical provisions as to accumulation of income, the distribution of the income and principle, and the termination of trust. However, all ten (10) trusts (being all the trusts with the exception of the trust for his wife) provide, "that the net income . . . shall be accumulated until the date of my death and thereafter shall be paid. . ."

Those same trusts (except the Fred Jay Pfeifle Trust) with regard to distribution of the principle provide that "upon the termination of the . . . trust the same shall be distributed to. . . "

Other than the Sybil C. Rett Pfeifle Trust, there was no reservation of power to amend any of the trusts, and such power by virtue of the first amendment to the trust was thereafter irrevocably relinquished. Under Article XIV entitled, "Power Granted to Certain Beneficiaries," the beneficiary of each trust, except the Carl Pfeifle and Julia Pfeifle Trusts, was granted "during the period of sixty (60) days from the date hereof . . . the right and power to direct the trustee to distribute to him or her all or any part of six thousand dollars ($6,000.00) from the corpus of the trust fund bearing his or her name, . . ."

Of prime significance in this matter is the termination date of each of the particular trusts and each of the other nine (9) trusts (all the trusts except that of the wife and Fred Jay Pfeifle Trusts). . . ". . . shall continue until the last in occurrence between the following events: (a) the date of my death; and (b) the date upon which neither the note of the Mechanical Mold and Machine Company deposited thereunder nor any com-

panion note thereto becoming part of this trust fund shall be an asset thereof.''

As concerns the termination of the Fred Jay Pfeifle Trust as a result of the second amendment dated April 5, 1961, its termination is determined as follows:

"Article IX-A.—The Fred Jay Pfeifle Trust Fund shall continue until the last in occurrence between the following events: (a) the date of my death; (b) the date upon which neither the note of the Mechanical Mold and Machine Company deposited thereunder nor any companion note thereto hereafter becoming a part of this trust fund shall be an asset thereof; and (c) the death of Fred Jay Pfeifle; subject however, to the dissolution of the Fred Jay Pfeifle Trust Fund at any time after events ''(a)'' and ''(b)'' have occurred and Fred Jay Pfeifle be thirty (30) years of age, either at the discretion of the trustee or upon an order of a court of competent jurisdiction based upon a finding made by said court that Fred Jay Pfeifle and the spouse of Fred Jay Pfeifle, if there be one, is or are provident in the management of his or their personal affairs.''

However, for the purpose of this opinion, the court will treat the Fred Jay Pfeifle Trust as if the provisions in all the trusts, save the one for the wife, are the same as to accumulation of income, distribution of income, termination of the trust, and distribution of the principle. On this basis, therefore, we find it necessary to discuss Section 5731.02, Revised Code, being the succession tax portion of the Revised Code of the state of Ohio. This provides in part:

''(A) Tax is hereby levied upon the *succession* to any property passing, *in trust* or otherwise, to or for the use of a person, institution, or corporation, in the following cases:
''* * *

''(C) When the succession is to property from a resident or to property within this state from a nonresident, by deed, grant, sale, assignment, or gift, made without a valuable consideration substantially equivalent in money or money's worth to the full value of such property.
''* * *

''(2) Intended to take effect in possession or enjoyment at or after such death.''

A succession under Section 5731.01 (B), Revised Code, is defined as:

"Succession means the passing of property in possession or enjoyment present or future."

There appears no doubt to this court that the trust was irrevocable and that the decedent, when he executed it and transferred the assets to the trustee completely and forever, divested himself of all title, interest, possession, and enjoyment to those assets or to any further income therefrom notwithstanding the second amendment to the trust. By the terms of the trust agreement, the income from the assets was to accumulate and be paid to the principal beneficiaries upon the death of the decedent.

However, since the transfer was made without consideration, there remains the question of whether the transfer in trust was intended to take effect in possession or enjoyment at or after the death of the decedent. If it was, it is taxable as a succession, Section 5731.02 (C) (2), Revised Code.

Summarizing, we thus have a transfer of property into an irrevocable trust where the owner has divested himself of right, title and interest in the "Trust property." In addition, he cannot receive income from the trust since the trustee is directed to accumulate it until he dies, at which time it is to be distributed to the principal beneficiaries of the trust; and, as to the principal or corpus, it cannot be distributed until termination of the trust which (except for the $6,000.00 provision under Article XIV) must be terminated (except for the Fred Jay Pfeifle Trust) in the manner outlined above.

Article XIV of the trust conferred upon Arthur Pfeifle, Dorothy Pfeifle Stroupe, Marjorie Pfeifle Boden, Joyce L. Pfeifle, Fred Jay Pfeifle, Frances May Pfeifle, Kenneth George Stroupe, Robert Arnold Stroupe and Hubert C. Rett (nine beneficiaries) a right to direct the trust to pay him or her from the corpus of the trust the sum of six thousand dollars ($6,-000.00) each. This was undoubtedly intended to take advantage of annual gift tax exclusion permissible under the United States Internal Revenue Code. Such right to receive was effective in possession and enjoyment immediately, unconnected with nor dependent upon the death of the decedent. The fact that the beneficiary did not exercise such right is irrelevant. Accordingly, fifty-four thousand dollars ($54,000.00) of the

transfer in trust is correctly excluded from the decedent's estate and is not a taxable succession.

It is thus apparent that the beneficiaries under these trusts had no right to actually receive nor could they acquire possession of the income before the death of the donor; nor could the beneficiary under those trusts receive the corpus of the trust at any time earlier than the death of the donor. Except for the six thousand dollars ($6,000.00) hereinbefore mentioned, if the note was paid off (or converted or invested so it no longer specifically was an asset of the trust) first the beneficiary was not yet entitled to distribution of the corpus because the donor was still alive and the beneficiary is not entitled to distribution until the subsequent or second event has occurred, which would be the death of the donor. On the other hand, if the donor died first, the beneficiary is not yet entitled to distribution of the corpus since the subsequent or second event has not yet occurred, which would be the date the note was paid or converted. Obviously, the earliest date the beneficiary can get possession or enjoyment of the corpus, or of the income, is the date of death of the donor.

It follows that unless the possession or enjoyment of and in the income from the transferred property to the trustee is constructively in possession or enjoyment of the beneficiaries, the transfer was intended to take effect in possession or enjoyment at or after the death of the decedent.

Neither party has submitted, nor can the court find, any decision of the Ohio Supreme Court or any Appellate Court which squarely meets the question of whether an inter vivos transfer into an irrevocable trust where the donor retains no right to any income but provides that it shall accumulate during his lifetime for distribution at his death and postpones the distribution of the corpus to the beneficiaries to a time no earlier than the donor's death, constitutes a transfer intended to take effect in possession or enjoyment at or after the death of the donor.

Though the cases of *Sherman* v. *Tax Commissioner*, 125 Ohio St. 367, *In re Thompson*, 147 Ohio St. 119, and *In re Hazelton*, 148 Ohio St. 127, presented to the court the question of whether the particular transfer was one intended to take effect in possession or enjoyment at or after the death of the

decedent, the facts in each case were different from those in the instant case.

A reading of those cases does disclose that the succession taxes can reach an inter vivos transfer to a trust whether the trust is revocable or irrevocable, or whether the estate or interests transferred were vested or contingent; that where the income from the trust res of a revocable trust is reserved to the donor during his life, with power in the trustee to invade the corpus for the benefit of the donor, and the other beneficiaries of the trust cannot enjoy the income or receive the principal from the trust until the death of the donor, such transfer is one intended to take effect in possession or enjoyment at or after the death of the donor and constitutes a taxable succession under Section 5731.02, Revised Code (*Sherman v. Tax Commr., supra*).

On the other hand, if the trust is irrevocable with no reservations of control in the donor, and the beneficiaries of the trust, other than the donor, receive possession or enjoyment of the income from the trust res *immediately* upon the creation of the trust and such possession or enjoyment of the income is not dependent on the death of the donor, the transfer is not taxable as one intended to take effect in possession or enjoyment at or after the death of the donor, nor is the net corpus of the trust so taxable where the beneficiaries receive distribution of the remainder of the corpus at the death of the donor if the corpus could have possibly been consumed through the power of invasion by those immediately entitled to the income and/or principal during the life of the donor. *In re Thompson, supra*; *In re Hazelton, supra*.

The cases on the ''intended to take'' provision seem to indicate that the succession or inheritance tax statutes were designed and intended to reach transfers which were incomplete or intended as a substitute for a testamentary disposition; or intended to reach transfers in which less than full legal title or beneficial ownership has passed. The succession statutes are grounded in the theory that the transfer was not complete for tax purposes while the donor remained alive and that his death was the ''generating source'' of full legal title, or beneficial ownership in the beneficiaries, *i. e.*, if possession or enjoyment by the beneficiary depended upon the death of the donor.

The tax is avoided only if the possession or enjoyment of the beneficiary is not dependent on the death of the donor. Certainly when possession and enjoyment are immediate upon the creation of the trust the transfer is not a taxable succession. (*In re Thompson, supra*; *In re Hazelton, supra*.)

In conclusion, the law appears to be that the tax is avoided only when possession or enjoyment is not intended by the donor to be delayed until his death or thereafter. Obviously, if possession and enjoyment are immediate when the trust is created, the transfer occurs then and there for tax purposes, and therefore there is no death tax. Moreover, if possession or enjoyment occurs after the trust is created, but is not intended by the donor to become effective after his death, no taxable succession results upon his death. However, if possession or enjoyment are so long delayed that it is fairly obvious that the decedent intended that no beneficiary could enjoy the property until his death or thereafter, a taxable succession occurs at his death.

The facts in the record, to wit: taking into consideration the age of the decedent, his life expectancy of approximately five (5) years, the terms of his will and the provisions of the trust, the fact that both will and trust were made simultaneously and that by the controlling terms one dovetailed with the other, the disparity between the amount left under the will and the amount to be distributed by the trusts under which the beneficiaries (except for the right to $6,000.00 from the corpus of the trust if exercised within 60 days), were postponed as to corpus in possession and enjoyment and postponed as to possession of income until the death of the decedent, seem to clearly indicate that the trust was in substance and reality a substitute for a testamentary disposition and so this court finds.

While it is true that the Pfeifle Trust was irrevocable and the decedent parted with his "full bundle of rights" (ownership), including possession and enjoyment in the assets transferred to the trustee, it does not automatically follow that all these attributes of ownership passed immediately in enjoyment or possession to the beneficiaries. *In re Heine*, 61 Ohio Law Abs. 384 (1950), a scholarly opinion by Judge Davies of the Hamilton County Probate Court cited by the executors involving a trust with provisions similar to the Pfeifle Trust, the court held that a ". . . transfer of property, made before

the testator's death, . . . *not intended to accomplish a testamentary disposition of his property,* when made by means of an irrevocable gift in trust with provision that the trustee accumulate the income and pay the accumulated income and corpus to named beneficiaries at or after the donor's death, does not subject the trust to a tax as a transfer intended to take effect in possession or enjoyment at or after the grantor's death.'' (Emphasis added.)

The court further reasoned and held:

''When, therefore, in the instant case, Emilie L. Heine transferred securities to The Lincoln National Bank by the terms of the outlined trust, she irrevocably parted forever with all of her interest, title, possession and enjoyment in those securities. Her retention of the right to require the trustee to resign and to enlarge or restrict the trustee's powers to invest and reinvest trust corpus was for the benefit of the beneficiaries and does not affect the taxability of the trust gift.

''Mrs. Heine's gift was not made in contemplation of death and was not intended to accomplish a testamentary disposition of her property. At the instant her gift was completed, both possession and enjoyment of the transferred securities and all right to the income therefrom passed from her to her trustees for the benefit of her children and others. No additional right passed at her death. The gift was intended to take effect, and did take effect, in possession and enjoyment immediately when made and not immediately at or after her death.''

As reflected in that opinion the authorities are divided as to whether the succession tax, under those provisions, was intended to reach such transfer. However, in addition to the fact that this court holds that the Pfeifle Trust was intended to accomplish a testamentary disposition, this court does not agree that when income passes to the trustee for the benefit of the beneficiaries that ''The gift was intended to take effect and did take effect, in enjoyment and possession immediately when made and not immediately after her death.''

It is the opinion of this court that if the beneficiaries were postponed in their right to receive income or principal until the death of the decedent that despite the fact that decedent parted with all when he transferred the assets to the trustee, less than all at that very same time passed to the principal bene-

ficiaries in which case the transfer could only be intended to take effect in possession or enjoyment at or after the death of the decedent.

"It is the opinion of the court that the question of title vesting is not the controlling factor. By the very terms of the statute involved herein the question is when did grantees have the right to 'possession or enjoyment' and not when did title vest in them. That is to say, even though legal title may have vested in grantees as of the day of the conveyance, they did not in fact have the right to possess the property herein; they did not have the right to enjoy said property, in fact, they could do nothing with the property until the death of the grantor herein."

"This court has given the terms 'possession and enjoyment' the common everyday layman's connotation in considering this matter." *Estate of Sharp*, 67 Ohio Law Abs. 415 (1954).

Furthermore, unlike the facts in this case, the circumstances and facts present at the time the trust was executed in the *Heine case* were strong enough to support a finding that there was no intention to accomplish a testamentary disposition by means of the inter vivos transfer.

The application of Section 5731.02, Revised Code, as applied in the case of *Bowers, Tax Commissioner, Appellee,* v. *Evans, Exrx., Appellant,* 173 Ohio St. 137, and the *Kessler case* reported in 177 Ohio St. 136, furnishes additional guidelines in our approach to the instant case. This court is of the opinion that the principle is now well established in Ohio, that . . . *the controlling point seems to be in all instances that the acquisition of the right to the full and complete enjoyment of property by virtue of the death of another creates a taxable succession to the property where the enjoyment prior to death was something less than full and complete.* (Emphasis added.)

Life is generally a step ahead of our laws and judicial interpretations of laws. Death, however, allows an abstract evaluation of those events and happenings during the lifetime of the decedent, and often results in the law overcoming or closing the gap insofar as a determination of what the acts of the decedent, during his lifetime, added up to and how they actually affect the tax on succession. The decedent did not create a trust of the type and character contemplated. This court is of

the opinion that the trust was a testamentary vehicle for the distribution of the decedent's assets.

In reaching this conclusion, the court is mindful of the fact that there is a respectable division of authority as to the applicability of the "intended to take" portion of the succession tax Section 5731.02 (C) (2), Revised Code, under the facts presented herein. In the absence of a controlling Ohio case and notwithstanding the learned opinion set forth by the court in *Heine, supra*, it is the opinion of this court that logic and reason require the imposition of the tax under these facts.

In view of the fact that this court finds that the transfer in trust in this case was intended to take effect in possession or enjoyment at or after the death of the decedent, it will not be deemed necessary to pass on the question of whether the transfer was made in contemplation of death.

The Tax Commissioner will prepare the journal entry sustaining his exceptions, except for the sum of fifty-four thousand dollars ($54,000.00) as set forth in this finding, saving exceptions to the executors.

*Judgment accordingly.*